William J. Warfel
Indiana State University
Insurance and Risk Management Program
Terre Haute, IN 47809
(812) 237-2122 (Office)
(765) 653-0662 (Home)

WORK HISTORY:

Professor of Insurance and Risk Management
Indiana State University, Terre Haute, Indiana
(August 1999-Present)

Associate Professor of Insurance and Risk Management
Indiana State University, Terre Haute, Indiana
(August 1994-August 1999)

Assistant Professor of Insurance and Risk Management
Indiana State University, Terre Haute, Indiana
(August 1990-August 1994)

Assistant Professor of Finance and General Business
University of Southern Mississippi, Hattiesburg, Mississippi
(August 1988-August 1990)

TEACHING ACTIVITIES:

Taught Commercial Property Insurance, Health Insurance, Life Insurance, Introduction to Risk and
Insurance, Commercial Liability Insurance, and Insurance Seminar.

SERVICE ACTIVITIES:

Expert Witness

Prepared a Declaration concerning whether a licensed life insurance agent breached her professional
responsibility in identifying the spouse of the client as the primary beneficiary on a $500,000 term life
insurance policy that was issued by American General Life Insurance Company (AIG) on August 20,
2017, as opposed to identifying as the primary beneficiary a trust entity to be created upon the death of
the client, this trust being created for the exclusive benefit of the client's son, and this son's children, the
grandchildren of the client (Johan Alvarez V. Yasmin Pena, Martin Tuiran, Promiseland Insurance &
Financial Services Corporation, & Promiseland Insurance Agency, Inc.), July 2023.

Prepared a Memorandum evaluating whether Builders Mutual Insurance Company (1) breached the
applicable Builders Risk Insurance Policy in filing a Complaint for Declaratory Judgment, asserting that a
claim submitted by GCC Construction/Tahini Main Street for the cost to remediate a four story building in
downtown Chattanooga, Tennessee, as well as loss of rental income from the lease of spaces in this
building did not fit squarely within the text contained in the collapse provision in this policy, and (2)
processed this claim in a manner consistent with sound claims handling practices in the industry (Builders
Mutual Insurance Company V. GCC Construction, LLC & Tahini Main Street, LLC), July 2023.

Prepared a Memorandum evaluating whether American Financial Security Life Insurance Company
breached its contractual obligation under the terms of a short-term Certificate of Insurance in connection
with medical expense claims submitted by a covered person who was diagnosed with aggressive prostate
cancer several years after the Certificate of Insurance was issued, applying numerous internal policy
limits, notwithstanding the fact that the Enrollment Application completed by a covered person with the

EXHIBIT 2

assistance of an American Financial Security Life Insurance Company agent made no reference whatsoever to these internal policy limits, but did highlight the fact that the maximum benefit per coverage period was $1,000,000 (Cawley V. American Financial Security Life Insurance Company, et al.), June 2023.

Prepared a Memorandum evaluating a business income/extra expense claim that was submitted by Cedar Rapids Country Club under a Business Income/Extra Expense Coverage Form underwritten by SECURA Insurance Company in connection with a windstorm which caused extensive damage to property that collectively comprised the country club (Cedar Rapids Country Club V. SECURA Insurance Company), June 2023.

Prepared a Memorandum evaluating whether Standard Fire Insurance Company processed several automobile liability insurance claims connected to an automobile accident in accordance with sound claims handling practices in the insurance industry; in this case, Standard Fire Insurance Company filed a Formal Complaint for Interpleader & Declaratory Judgment, seeking to (a) deposit with the trial court the $100,000 per accident policy limit, and (b) "walk away" from its obligation to conduct an investigation concerning the circumstances of the automobile accident, thereby exposing its own policyholder to an unjust punitive damages verdict in a jury trial, unless the policyholder picked-up the expense connected to conducting the required investigation (Baldwin, Assignee of Travor & Tommi Hummel V. Standard Fire Insurance Company), May 2023.

Prepared a Declaration in a case concerning a Real Estate Professional Errors & Omissions Insurance Policy; in this case, an evaluation was undertaken concerning (1) a trigger of coverage issue; the professional liability claim ultimately stemmed from a Consumer Complaint submitted by a third party to The Office of Indiana Attorney General, and (2) whether liability coverage is restricted to the $2,500 policy limit for costs of litigation connected to a Disciplinary Action filed by The Office of Indiana Attorney General with a licensure board against an independent contractor, real estate appraiser that is based on alleged, mere professional negligence as opposed to misconduct (1st Class Realty, Inc.; Accent Consulting Group Inc., Plaintiff V. Great American Assurance Company, Defendant), April 2023.

Prepared a Memorandum evaluating whether an experienced, commercial insurance agent committed an error/omission in (1) failing to review the Captain Warranty Endorsement attached to an ocean marine insurance policy that covered the yacht identified in the Declarations Page, confirming that the Captain identified by names in the Captain Warranty Endorsement was still serving as the Captain of the yacht, referenced above, as of the renewal date contained in the policy that was serviced by The Keenan Agency, (2) failing to negotiate with the Chubb underwriter the identification of the owner of the yacht as a qualified Captain to be identified by name in the Captain Warranty Endorsement, and (3) failing to negotiate with the Chubb underwriter a "fix", the effect of which would have been to remove the requirement contained in the Captain Warranty Endorsement stipulating that a specific, named individual be aboard the yacht at the time of the loss in order for coverage to be applicable under the terms of the policy (Boater's Emergency Service, LLC, Plaintiff V. Joseph B. Sebring, et al., Defendants V. Rick Bersnak & The Keenan Agency, Third Party Defendants), March 2023.

Prepared a Declaration concerning (1) whether Northwestern Mutual Life Insurance Company committed a simple breach with respect to the life insurance contract it had issued to Franklin Guzzerra, the father of Susan Guzzetta, plaintiff, and Robert Guzzetta, a defendant in this legal case, along with Northwestern Mutual, and (2) assuming that Northwestern Mutual did commit a simple breach, whether this simple breach was egregious, given the presence of red flags that would alert any competent policy administration unit in a life insurance company to the fact that Robert Guzzetta had acted on a crystal clear, conflict of interest in deleting his sister, Susan Guzzetta, as a co-primary beneficiary, and adding his two children as co-contingent beneficiaries under the terms of the life insurance contract (Susan Guzzetta, et al., Plaintiffs V. Robert Guzzetta, Northwestern Mutual Life Insurance Company, et al., Defendants), November 2022.

EXHIBIT 2

Prepared a Declaration concerning whether Nationwide General Insurance Company acted in good faith in its processing of an uninsured motorist liability claim; in the underlying case, the driver of the insured vehicle (Unit One) had slowed down, attempting to avoid a pothole; Unit Two, travelling the opposite direction, had been unable to stop before coming into contact with Unit One; Unit Two, however, had been pushed forward by a "hit and run" driver, who had immediately left the scene of the accident, for whatever reason; the issues concerned whether (1) Uninsured Motorists Liability Insurance procured by Unit One had been triggered, and (2) if so, the extent to which the bodily injury of the driver of Unit One was linked to this automobile accident, or alternatively, to an automobile accident that had occurred maybe ten years prior to the automobile accident that gave rise to this litigation (Steven Rousana, Plaintiff V. Nationwide General Insurance Company, et al., Defendants), September 2022.

Prepared a Declaration in a case concerning whether Jackson National Financial Services (1) committed simple breaches with respect to four annuity contracts in which it had entered into a contractual relationship with Franklin Guzzetta, the father of Susan Guzzetta, Plaintiff, and Robert Guzzetta, an individual Defendant in this legal case, and (2) failed to follow-up on numerous red flags that would have alerted any competent financial services retailer concerning the need to investigate whether Robert Guzzetta's numerous withdrawals from his father's annuities were authorized by his father (Susan Guzzetta, Plaintiff V. Robert Guzzetta et al, National Planning Corporation, d/b/a Jackson National Financial Services, Inc. et al, Defendants), September 2022.

Prepared a Declaration in a case concerning whether (1) licensed insurance agent, Steve Lopiccolo, in his haste to enroll David Strowhouer in the USAA Auto Insurance Program as quickly as humanly possible such that the credit card data supplied by Mr. Strowhouer could be processed quickly, securing the premium invoice, bears professional responsibility for abuse of discretion in not carefully reviewing underwriting data available to him via the USAA underwriting system, the careful review of which would have alerted any competent underwriter of the need to follow up with additional inquiries in connection with the telephone conversation that occurred with Mr. Strowhouer on October 19, 2018, and (2) USAA Insurance itself bears responsibility based on (a) the underwriting system that it created, not taking full advantage of the underwriting data available at its discretion supplied by a vendor who accesses a prospective named insured's driving history (record) from the Pennsylvania Department of Transportation, and (b) failure to articulate an adequate, underwriting policy communicated to its licensed insurance agents to the effect that they have a responsibility to exercise their discretion, examining carefully all available system generated underwriting data, following up when needed with additional inquiries, all for the purpose of assuring that high risk, dangerous drivers such as Mr. Strowhouer are unable to procure automobile liability insurance, recognizing fully that denying access to automobile liability insurance to this small segment of the population is essential in keeping high risk, dangerous drivers off the public roads, thereby keeping the motoring public safe (Christian Eckman, Individually and as Executor of the Estate of Deana Marie Eckman, Deceased, Plaintiffs V. David Strowhouer & William J. Strowhouer, Jr., D.O., & Encompass Home & Auto Insurance Company, & USAA Casualty Insurance Company, Defendants), August 2022.

Prepared an Expert Report in a case involving a "Domestic and Export Credit Insurance Shipments Form", in which an evaluation was presented concerning whether (1) Respondent National Union Fire Insurance Company (NUFIC) breached its contractual obligation owed to Voice Tele Services, Inc. (VTS), and (2) NUFIC breached its non-delegable duty to underwrite in agreeing to issue the trade credit insurance policy, referenced above, to VTS (VTS, Claimant V. NUFIC, Respondent), July 2022. Prepared Rebuttal Expert Report, August 2022. Testified in Arbitration Hearing, October 2022.

Prepared a Declaration in a case concerning whether an insurer processed a property insurance claim consistent with best claims handling practices in the industry; the case concerned whether the "Intentional Loss" exclusion, as well as the "Control of Property" condition precluded coverage under a homeowners insurance policy where a named insured set several fires at the premises, and proceeded to commit suicide, but the other named insured had no awareness that her husband had planned to destroy the

EXHIBIT 2

marital home on the day of the final divorce proceeding (Tracy Bedlion V. Travelers Indemnity Company of America), May 2022.

Prepared a Declaration in a case concerning whether a life insurance agent committed an error or omission in servicing an account in which she sold the client several life insurance products and an annuity; in evaluating whether an error or omission was committed, the financial goals of the client were paramount; assuming that an error or omission was committed for the sake of argument, whether the client suffered a legal detriment was paramount (Tina Sizemore V. Chastity Collins, et al.), April 2022.

Prepared a Declaration in a case concerning whether the insurer acted in good faith in its processing of a hailstorm claim connected to a catastrophic hailstorm that occurred in Colorado Springs, Colorado on August 6, 2018; this hailstorm claim was presented by the policyholder under a Homeowners Insurance Policy; the paramount issue pertaining to the breach of contract issue concerned whether some of the interior water damage in the residence was attributed to overloading of shingles on the roof by the contractor (an uncovered claim), or the hail that had created an opening in the roof; the paramount bad faith issue concerned whether the insurer's investigation was sufficient (Ramon Duron, Plaintiff V. Farmers Insurance Exchange, Defendant), February 2022. Prepared an Affidavit, March 2022. Prepared a Rebuttal and Supplemental Affidavit, March 2022. Deposed in this case, April 2022.

Prepared a Declaration in a case concerning whether a third party who was provided a loaner vehicle by a friend who was employed by an automobile dealership (1) qualified as a "customer" under the terms of a Garage Operations-Auto Only Liability Insurance Policy, and an Umbrella Liability Insurance Policy, in which case he would not fit within the definition of an "insured" under both respective policies, and (2) whether an automobile exclusion precluded coverage under the Umbrella Liability Insurance Policy (Jennifer Sloniker, & the Estate of Jason Michael Sloniker, by its Personal Representative, Jennifer Sloniker, Plaintiffs V. Motorists Mutual Insurance Company, Defendant), October 2021.

Prepared a Declaration in a case concerning whether the insurer acted in good faith in its processing of several property insurance claims connected to a fire that occurred on June 4, 2015, and a theft that occurred on June 5, 2015; these respective claims were presented by insured persons' under a Boatowners Policy, a Personal Automobile Policy, and a Homeowners Policy (Bolin V. Allstate Property & Casualty Insurance Company), July 2021.

Prepared a Declaration in a case concerning a CGL Policy and an Umbrella Liability Policy, in which the owner of a shopping center (a named insured), and the property management firm (a named insured) were both sued based on an omission pertaining to the proper execution of a Right of Entry Form for the Indiana Department of Transportation (INDOT) so that INDOT could gain access to the premises of the shopping center, and implement precautions concerning a dangerous egress connecting the shopping center to a highway; because the egress issue was not addressed on a timely basis, an automobile accident occurred, resulting in a serious, bodily injury to a passenger in one of the two vehicles involved in a collision; the Declaration responded to a Complaint for Declaratory Judgment filed by Property-Owners Insurance Company against the two named insureds', referenced above, as well as the injured passenger of the vehicle, referenced above, contending that the two respective liability insurance policies', referenced above, do not provide defense and indemnification coverage with respect to the underlying, liability case, referenced above (Magdalen France, by & through her natural parents & guardians, Plaintiff V. Regency Northern Indiana, LLC, Cross Property Management, LLC, RMS Wabash, LLC, Defendants V. Property-Owners Insurance Company, Defendant), June 2021.

Prepared a Declaration in a case concerning Business Liability Coverage contained in a Businessowners Policy, in which an auctioneer (the named insured) was sued for wrongful death, alleging that the named insured failed to supervise properly a recycling, independent contractor, who, by mistake, placed a tank containing chlorine gas in a truck for the purpose of being hauled to a local recycling facility; the sealed tank exploded at the recycling facility, causing injury and death to innocent bystanders; the Declaration evaluated whether Country Mutual Insurance Company was correct it its assertion that the pollution exclusion, contained in an ISO standard, CGL Policy, precluded indemnification and defense coverage for the named insured, Country Mutual Insurance Company, an Illinois Corporation (Plaintiff) V. Steven O.

EXHIBIT 2

Anderson, as personal representative of the Estate of Edward K. Dumaw, on behalf of the Estate & surviving family members, Carrie Dumaw, Kristen Dumaw, Megan Dumaw, & Anna Dumaw, individually, et al. (Defendants), June 2021.

Prepared a Declaration in a homeowners insurance case stemming from the Woolsey Wildfire that resulted in the destruction of a number of homes in affluent neighborhoods located in Malibu, California (a designated brush area prone to wildfires in which State Farm issued Companion Policies-a Difference in Conditions (DIC) Policy-with a mandatory attached "California Fair Plan Policy Perils Exclusion," under which the fire peril is not a covered peril, assuming that the property was eligible to be insured through the procurement of a property insurance policy from the California Fair Plan); eligibility hinges on whether a property insurance policy in compliance with California Insurance Code Section 2070 is available in the admitted market; the Declaration addressed issues concerning whether (1) the State Farm Companion Policy was in compliance with Section 2070, (2) State Farm was permitted to exclude the fire peril, given California Insurance Code Section 2080, which generally permits an insurer to limit its liability under the terms of the property insurance policy, (3) the "California Fair Plan Policy Perils Exclusion," assuming that it is legally valid in this case, given the availability of fire coverage in the admitted market, in fact applied to the property insurance claim presented to State Farm in this case; this issue, in turn, hinged on whether the named insured was put on sufficient notice by State Farm concerning the existence of this exclusion in terms of information that was presented on Renewal Certificates and Declarations Pages annually sent to the named insured, and (4) State Farm acted in bad faith with respect to its processing of the property insurance claim presented by the named insured in the immediate aftermath of the Woolsey Wildfire that occurred in November 2018 (Zilinskas V. State Farm General Insurance Company, et al.), May 2021. Deposed in this case, July 2021.

Prepared a memorandum evaluating a breach of contract/bad faith claim where the carrier filed a Motion to Dismiss with respect to a business income claim that was submitted under the Business Income (And Extra Expense) Coverage Form that was attached to a Commercial Property Insurance Policy; this business income claim stemmed from two shutdown orders issued by public health officials in the immediate aftermath of the emergence of the coronavirus in March 2020 (Selery Fulfillment, Inc. V. Colony Insurance Company, et al.), March 2021.

Prepared a memorandum evaluating a breach of contract/bad faith claim where the carrier suspended coverage with respect to a claim for monthly home health care benefits under a long-term care policy that included an unlimited, lifetime benefit period, but then (1) retroactively paid the suspended monthly home health care benefits, (2) resumed payment of the monthly home health care benefits subject to a Reservation of Rights letter, and (3) filed a Declaratory Judgment Action against the insured, contending that the insured did not meet the Activities of Daily Living requirement under the terms of the long-term care policy (Bankers Life & Casualty V. Nancy Arlene Klapes & Home Nursing Services, Inc.), March 2021. Deposed in this case, April 2021.

Prepared a memorandum evaluating breach of contract/bad faith claims that stemmed from a property insurance claim presented by RAP INDY, LLC and MSI Lynhurst Indianapolis Grocery, LLC under Commercial Property Insurance policies underwritten by Travelers Indemnity Company and Zurich American Insurance, respectively, in successive policy periods in which multiple thefts of electrical wiring and copper waterlines, etc. connected to plumbing fixtures occurred in a vacant grocery store building over a six month period before these thefts were discovered by a real estate broker who had entered the vacant building for the purpose of showing the property to a prospective owner, or lessee; in addition to the thefts referenced above, there was substantial vandalism damage caused by the thieves, and water damage that resulted from the thieves entering the vacant building through a roof hatch that was left open, allowing extremes of temperature, moisture, and rain to enter the vacant building, thereby causing additional property damage, as well as mold to develop (RAP INDY, LLC & MSI Lynhurst Indianapolis Grocery, LLC V. Zurich American Insurance & The Travelers Indemnity Company), February, 2021. Prepared Affidavit, March 2021. Deposed in this case, April 2021.

Prepared a memorandum evaluating (1) whether a retail broker bears professional responsibility for the $381,747 compensatory damages plus attorney fees and other litigation cost, on account of failure to

EXHIBIT 2

include a reference, in the binder issued by Roemer Insurance shortly before the November 1, 2017 renewal date, to the 100 percent mandatory minimum annual earned premium provision that was in fact included in not only the Truckers Auto Liability policy sent to Roemer Insurance, as well as Cardinal Transport and CR Transport, two months or so subsequent to the November 1, 2017 renewal date, but also was included in the binder issued by Strategic Insurance Underwriters, the general managing agent who represented American Hallmark Insurance Company, shortly before the November 1, 2017 renewal date, and (2) assuming that the omission referenced above was intentional on the part of Robert Schwartz, the President of Roemer Insurance who had responsibility for the handling of the Cardinal Transport and CR Transport account, a major account, whether punitive damages, as well as consequential damages, including attorney fees and other litigation cost, are warranted based on Mr. Schwartz's intentional misconduct that in fact occurred in this case (Cardinal Transport, Inc., a Delaware Corporation, & CR Transport, Inc., A Nevada Corporation V. Assured Partners of Ohio, LLC, An Ohio Limited Liability Company, Successor in Interest to Wellington F. Roemer Insurance, Inc., A Nevada Corporation, D/B/A Roemer Insurance, & Robert Schwartz, Individually), November, 2020. Deposed in this case, January 2021. Prepared an Affidavit in this case, November, 2021. Prepared a Supplemental Affidavit in this case, December 2021.

Prepared a memorandum (1) evaluating whether an insurer breached an insurance policy that provided Dwelling and Loss of Rents coverage for a duplex that was rented out to several tenants by the named insured when it attempted to settle a claim for water damage that included dry out cost, property damage, and loss of rents for an inordinately small amount in relation to the documented loss submitted by the named insured, and (2) assuming that a breach was committed, whether the insurer acted in bad faith in connection with the handling of the claim referenced above ( Elina Wingate V. The Foremost Insurance Company ), November 2020.

Prepared a memorandum (1) evaluating whether an insurer breached an insurance policy that provided Contractors Equipment Coverage on a 2008 Daewoo High Chassis Excavator, Solar 300LL, S#1004 when a theft claim was denied, and (2) assuming that a breach was committed, whether the insurer acted in bad faith in connection with its handling of this theft claim ( Bryan Newton & Newton Environmental, DBA Waste Away Carting, LLC V. Joseph T. Cutruzzula, Jr., The Andover Companies, & Merrimack Mutual Fire Insurance Company, et al. ), March 2020. Deposed in this case, July 2020.

Prepared a memorandum (1) evaluating whether an insurer breached an insurance policy that provided Blanket Farm Unscheduled Personal Property Coverage when a theft claim was denied, and (2) assuming that a breach was committed, whether the insurer acted in bad faith in connection with its handling of this theft claim ( James E. Getty & Angela M. Getty V. Farm Bureau Property & Casualty Company & Farm Bureau Financial Services ), January 2019.

Prepared a memorandum evaluating whether an insurer acted in bad faith with respect to its processing of a business contents claim ( Leonardo Garcia, et al V. Allstate Insurance Company ), August 2017. Deposed in this case, September 2017.

Prepared a memorandum evaluating various insurance coverage issues with respect to a claim that was presented under a Contractor's Equipment – Equipment Leased Or Rented From Others Coverage Endorsement (Howell Tractor & Equipment Company V. Alliance Tank Service, LLP), October 2016. Deposed in this case, May 2017.

Prepared a memorandum evaluating whether an insurer breached a Commercial Automobile Insurance Policy when a proper rejection of Underinsured Motorists Liability Coverage was not executed pursuant to its coverage template and the Indiana Uninsured and Underinsured Motorists Liability Coverage Statute (Jacqueline Cochran, Individually & as Administrator of the Estate of Dennis Cochran V. Hartford Fire Insurance Company), July 2016.

Prepared a memorandum evaluating an underinsured motorist coverage issue (Miranda Scroufe V. Zurich Insurance Company, et al.), March 2013.

EXHIBIT 2

Prepared a memorandum evaluating whether State Farm (1) breached its contractual obligation when it voided the applicable homeowners insurance policy based on its contention that the insured submitted altered sales receipts connected to several oriental rugs that were damaged in a fire, and (2) acted in good faith in its handling of the homeowners insurance claim when it learned that these altered sales receipts had been submitted to State Farm by the insured (Elliott V. State Farm Fire & Casualty Insurance Company), November 2011. Deposed in this case, May 2012.

Prepared a memorandum evaluating whether an insurer breached a Commercial Property Insurance policy and acted in bad faith when it denied coverage for cosmetic damage to a metal roof caused by hail (C & J Real Estate, Inc. V. Auto-Owners Insurance Company), May 2012.

Prepared a memorandum evaluating various liability insurance coverage issues with respect to a claim that was presented under both a Business Auto Coverage Form and a Commercial General Liability Coverage Form (Immokalee Produce Shippers, Inc. V. ACE Fire Underwriters Insurance Company; Immokalee Produce Shippers, Inc. V. Indemnity Insurance Company of North America), April 2012.

Prepared a memorandum evaluating whether an insurer acted in bad faith with respect to its processing of a disability claim (Nancy Erhart V. United of Omaha Life Insurance Company), April 2012.

Prepared a memorandum evaluating (1) whether Motorist Mutual acted in good faith in completing its investigation concerning why Jennifer Harris was identified as the applicant-named insured in the application for insurance as opposed to Jack Custer, (2) who bears responsibility for the inaccurate identification of the applicant-named insured in the application for insurance, and (3) whether Jennifer Harris had an insurable interest in the home that was consumed by a fire (Jack Custer & Jennifer Harris V. Motorist Mutual Insurance Company, Risinger Insurance, et al.), March 2012.

Prepared a memorandum evaluating whether an insurer, in its response to a fire insurance claim that was presented by a policyholder under a homeowners insurance policy, (1) breached the contract, and (2) acted in bad faith (Harold Switzer V. Sentry Insurance, A Mutual Company), February 2012.

Prepared a memorandum evaluating whether an insurance agent breached her professional responsibility to a client (Von Gregory & Patricia Gregory V. Bybee Insurance, Inc.), December 2011. Deposed in this case, January 2012.

Prepared a memorandum evaluating a Premium Classification issue under a Commercial General Liability policy (Granada Insurance Company V. Imperial Lawn & Garden Care; Ramon Garcia; & Filiberta Rebolledo, Personal Representative of the Estate of Amado Angeles Gomez), December 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a personal property claim that was presented under a homeowners policy (Wendt V. Auto-Owners Insurance Company, et al.), December 2011. Deposed in this case, December 2011.

Prepared a memorandum evaluating whether an insurance agent breached her professional responsibility to a client (Indiana Restorative Dentistry, P.C. V. The Laven Insurance Agency & ProAssurance Indemnity Company, Inc.), October 2011. Deposed in this case, December 2011.

Prepared a memorandum evaluating whether an insurer breached its contractual obligation in denying a death claim that was presented under an individual life insurance policy (Berthaline C. Siburt, Individually & as Special Administrator of the Estate of James A. Siburt V. AIG American General Life Insurance Company, et al.), May 2011. Deposed in this case, November 2011.

Prepared a memorandum evaluating various insurance coverage issues with respect to a claim that was presented under an Open Installation Floater (Neshaminy Constructors, Inc. V. Federal Insurance Company), November 2011.

EXHIBIT 2

Prepared a memorandum evaluating whether Coe College (1) had a responsibility to design and implement a sound risk management program calculated to assure a safe environment for students who participated in the 2008 version of Flunk Day, (2) failed to implement properly the risk management program that it had designed, and (3) created a dangerous environment for students when it approved for the 2008 version of Flunk Day the installation of the inflatable obstacle course (Campbell V. Coe College), November 2011.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (SAMS Hotel Group, LLC V. Assurance Company of America & 1st Source Insurance, Inc.), November 2010. Deposed in this case, September 2011. Prepared a supplemental memorandum, October 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a builder's risk insurance claim ( SO 38th Street LLC V. Harleysville, et al.), August 2011. Prepared a supplement to this memorandum, October 2011.

Prepared a memorandum evaluating various insurance coverage issues with respect to a claim that was presented under an Employee Dishonesty Coverage Form (The College Network, Inc. V. Cincinnati Insurance Company), May 2011. Prepared an addendum to this memorandum, August 2011. Deposed in this case, August 2011. Prepared a bad faith supplement to this memorandum, October 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a commercial property insurance claim ( T.L. Montgomery, Inc. d/b/a Protein, Inc. et al. V. CNA Insurance Company ), July 2011. Deposed in this case, August 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a personal automobile liability insurance claim ( Wolfe V. Allstate Property & Casualty Insurance Company ), June 2011. Deposed in this case, August 2011.

Prepared a memorandum evaluating whether an insurance carrier breached its contractual, fiduciary, and legal (tort and statutory) obligations that it owed to an annuitant (Jenny J. Snedeker V. Stephen C. Snedeker, & Jackson National Life Distributors, LLC, d/b/a Jackson National Life Insurance Company), May 2011. Deposed in this case, June 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a commercial property insurance claim (Valle Vista Limited, LLC V. Selective Insurance Company of South Carolina), May 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a personal property claim that was presented under a homeowners policy (Mary Faye Miller V. Auto-Owners Insurance Company), April 2011.

Prepared a memorandum evaluating various insurance coverage issues with respect to an Employer's Liability claim that was presented under a Commercial General Liability insurance policy (Granada Insurance Company V. Jose Molina, Vielka Molina, Grocery Stop, Inc., d/b/a Los Cunados Grocery), December 2010.

Prepared a memorandum evaluating (1) the extent to which MI Windows & Doors, Inc. suffered a legal detriment as a result of not being given the benefit of additional insured status, pursuant to the terms of the Transportation Agreement, when Southeastern Freight Lines, Inc. apparently failed to take those steps required under the Transportation Agreement in terms of putting the insurer on notice concerning MI Windows & Doors, Inc.'s claim, and (2) whether this apparent omission on the part of Southeastern Freight Lines, Inc. constitutes bad faith (MI Windows & Doors, Inc. V. Southeastern Freight Lines, Inc.), August 2010. Deposed in this case, November 2010.

EXHIBIT 2

Deposed in the case, Alloyd Insulation Company, et al. V. Cincinnati Insurance Company, et al., July 2010. In this Bid Guaranty and Contract Bond case, the principal requested an evaluation concerning whether the obligor (surety company) (1) conducted an adequate investigation before reaching a settlement with respect to a claim that was presented by the obligee under the performance bond, and (2) if the investigation was deemed inadequate, whether the settlement amount would have been substantially reduced had an adequate investigation been conducted by the surety company.

Prepared a memorandum evaluating whether an (1) insurance agent breached his professional responsibility to a client, and (2) insurer breached its contractual obligation to the policyholder to provide coverage under an Inland Marine policy (Sterett Construction Company V. AmSouth Steel Erectors, et al.), February 2010.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Mary Jacques, as Administratrix of the Estate of Larry G. Hose, deceased V. Raymond Eugene Hoak & Images Club, Inc., V. Smallwood & Small Insurance, Inc. & G. Morgan Insurance Agency, Inc.), January 2010.

Deposed in the case, Patrick M. Brooks, Special Administrator of the Estate of Fred Hamilton V. State Farm Insurance Companies, et al., November 2009. In this wrongful death case, the Estate of Fred Hamilton requested an evaluation concerning whether State Farm had conducted an adequate investigation concerning whether Edward Leak had a sufficient insurable interest in the life of Fred Hamilton so as to justify the issuance of a $500,000 life insurance policy under which Edward Leak was the owner/beneficiary and Fred Hamilton was the insured.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Donna Thiele v. John Rodgers, et al.), June 2009. Deposed in this case, November 2009.

Deposed in the case, Voland-Hammond Property, LLC d/b/a Creekside Condo Association V. Bright & Williamson Insurance Agency & Financial Services, Inc., October 2009. In this insurance agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached the standard of care. This case was tried before a jury in state court in Nashville, Indiana on November 18, 19, 2009. The jury returned a verdict in favor of the policyholder, assessing 80 percent fault to the insurance agent and 20 percent fault to the policyholder.

Prepared a memorandum evaluating whether (1) a retail insurance agent and a surplus lines insurance agent breached his/her professional responsibility to a client, and (2) full replacement cost coverage is provided under the applicable commercial property insurance coverage (North Bay Real Estate, Inc. v. First Mercury Insurance Company, et al.), April 2009. Deposed in this case, September 2009.

Deposed in the case, Heartland Warehouse & Distribution Services V. Rebsamen Insurance, May 2009. In this insurance agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached the standard of care. This case was tried before a jury in state court in Springfield, Missouri on May 18-May 20, 2009. The jury returned a verdict in favor of the policyholder, assessing 72.5 percent fault to the insurance agent and 27.5 percent fault to the policyholder.

Prepared a memorandum evaluating whether an insurance agent breached her professional responsibility to a client (Timberlane Village Gardens Condominium Association v. Insurance Designers, Inc.), November 2008. Deposed in this case, April 2009.

Prepared a memorandum evaluating whether an insurance carrier breached (1) its contractual obligation to the policyholder to provide coverage under a Builder's Risk policy, and (2) the implied covenant of the utmost good faith in its handling of the claim (Vista Ridge Development, LLC V. Assurance Company of America), December 2008. Prepared an Affidavit directly responding to Assurance's Motion for Summary Judgment addressing these same issues, January 2009. Deposed in this case, February 2009.

EXHIBIT 2

Deposed in the case, James R. Gonzales, Jr. V. Ohio Casualty Insurance Company, June 2008. In this breach of contract/bad faith case, Mr. Gonzales, a claimant who the policyholder assigned its cause of action against Ohio Casualty, requested an evaluation of (1) various insurance coverage issues under a Commercial General Liability insurance policy that had been issued to the policyholder, and (2) the conduct of Ohio Casualty in terms of its response to the claim that had been presented by the policyholder.

Deposed in the case, Wayne & Diane Stahl V. Auto-Owners Insurance Company, et al., May 2008. In this insurance agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached the standard of care.

Prepared a memorandum evaluating various coverage issues with respect to a claim that was presented under a public official bond (City of Providence V. Ohio Casualty Insurance Company), June 2007. Deposed in this case, December 2007.

Prepared a memorandum evaluating whether a (1) Managing General Underwriter (MGU) breached its professional responsibility to a commercial policyholder, and (2) retail insurance agent breached its professional responsibility to a commercial policyholder (Sports Arena Management, Inc. DBA: American Heartland Ice Arena V. K&K Insurance; K&K Insurance V. American Security Insurance), November 2007. Deposed in this case, December 2007.

Deposed in the case, Rothschild Management Group, LLC V. Affiliated Insurance Agencies, Inc., et al., August 2007. In this insurance broker liability case, the policyholder requested an evaluation concerning whether the insurance broker breached the standard of care.

Prepared a memorandum evaluating whether (1) an insurance agent breached his professional responsibility to a client, and (2) coverage is provided under Section II of the applicable Homeowner's Policy (Tom & Diane Arnold, etc., et al. V. State Farm Insurance, et al.), August 2007.

Prepared a memorandum evaluating an insurer's response to a claim presented under a Business-Owner's Insurance Coverage Form (Zlatica Malbasa V. American Family Mutual Insurance Company), July 2007.

Prepared a memorandum evaluating various coverage issues with respect to a death claim that was presented under an individual life insurance policy (Katherine L. Yost V. Stonebridge Life Insurance Company), May 2007.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client ( Dan Van Gordon & Van Gordon Construction V. Larry Jackson, et al.), December 2006.

Prepared a memorandum evaluating whether an insurance broker breached his professional responsibility to a client (Superior Aluminum Alloys, LLC, et al. V. United States Fire Insurance Company, et al.), September 2006. Deposed in this case, November 2006.

Prepared a memorandum evaluating various liability insurance coverage issues with respect to a claim that was presented under an (1) underlying Garage Operations-Auto Liability Coverage Form, and (2) Umbrella Garage Operations- Excess Liability Coverage Form (Chehi V. Empire Fire & Marine Insurance Company), April 2006.

Prepared a memorandum evaluating (1) various property insurance coverage issues with respect to a claim that was presented under a homeowners policy, and (2) the conduct of the insurance carrier in terms of its response to this claim (Ault V. Shelter Insurance Company), February 2006.

Deposed in the case, Devinki V. L. J. Gliem and Associates, et al., February 2006. In this insurance agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached the standard of care.

EXHIBIT 2

Prepared a memorandum evaluating (1) various insurance coverage issues with respect to a claim that was presented by a bank under a first party Financial Institution Bond, and (2) the conduct of the insurance carrier in terms of its response to this claim (Matrix Bancorp, Inc. V. National Union Fire Insurance Company), January 2006.

Deposed in the case, Donna Combs V. Lumbermens Mutual Casualty Company, January 2006. In this bad faith case, the insurance carrier requested an evaluation concerning whether it breached the implied covenant of utmost good faith in the resolution of a disability income claim. On appeal, the Indiana Appellate Court implied that the trial court committed an error in excluding my expert testimony based on a lack of direct experience in handling individual disability income insurance claims, but ruled that the insurance carrier failed to make an offer of proof and, therefore, waived its right to allege an error. (No. 49A05 – 0608 – CV – 436, September 20, 2007). Petition to transfer this case to the Indiana Supreme Court denied, 2008.

Prepared a memorandum evaluating (1) various insurance coverage issues with respect to an Advertising Injury Liability claim that was presented under a Commercial General Liability insurance policy, and (2) the conduct of the insurance carrier in terms of its response to this claim (Pizza Magia V. Assurance Company of America), January 2006.

Prepared a memorandum evaluating various insurance coverage issues with respect to a death claim that was presented under an individual life insurance policy (Edith Vinci V. Conseco Life Insurance Company), July 2005.

Prepared a memorandum evaluating whether a Builder's Risk and Installation Form, along with the endorsements attached thereto, constitutes inland marine insurance as opposed to property insurance (Liberty Insurance Underwriters, Inc. V. The Weitz Company, LLC), June 2005.

Deposed in the case, Silver Dollar City V. Marsh USA, May 2005. In this insurance broker liability case, the policyholder requested an evaluation concerning whether Marsh USA breached the standard of care.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Hanson Cold Storage Company v. Gibson Insurance Agency), May 2005.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Nancy McGinn, as Administrator of the Estate of Jerome L. McGinn, Deceased V. Schuneman Insurance Agency, Inc.), December 2003. Deposed in this case, February 2005.

Deposed in the case, Underwriters at Lloyd's, London V. Zurich American Insurance Company, December 2004. In this breach of contract case, Lloyd's filed an equitable contribution action against Zurich contending that coverage exists with respect to a food contamination (or infestation) claim under an all-risk commercial property insurance policy that Zurich had issued to Bar-S Foods. In this case, Zurich requested an evaluation of various coverage issues.

Prepared a memorandum evaluating whether an insurance carrier had (1) an obligation to provide indemnity coverage under a commercial general liability policy with respect to a premises liability claim, and (2) engaged in vexatious and unreasonable conduct in terms of how it handled the claim (Travelers Insurance Company V. ConocoPhillips), July 2004. Deposed in this case, September 2004.

Prepared a memorandum evaluating whether an insurance carrier engaged in vexatious and unreasonable conduct in terms of how it handled a homeowners insurance claim (Lummis & Macbeth v. State Farm Fire & Casualty Insurance Company), August 2004.

Prepared a memorandum evaluating whether an insurance carrier breached the implied covenant of utmost good faith in the resolution of a commercial automobile liability insurance claim (State Auto Insurance Company V. Hellyer Construction Company, et al.), May 2004.

EXHIBIT 2

Deposed in the case, James & Vicky Engel & Broken Arrow, Inc. V. Capitol Indemnity Corporation, January 2004. In this bad faith case, the policyholder requested an evaluation concerning whether the insurance carrier breached the implied covenant of utmost good faith in the resolution of a property and business income claim.

Prepared a memorandum evaluating various insurance coverage issues with respect to an underinsured motorists bodily injury claim (Nancy McGinn, as Administrator of the Estate of Jerome L. McGinn, Deceased V. Erie Insurance Exchange, d/b/a Erie Insurance Group), December 2003.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (C & L Trucking, Inc. V. Miles & Finch), November 2003.

Prepared a memorandum evaluating various insurance coverage issues with respect to a worker compensation insurance claim (Alexander Equipment Rental V. Regency Insurance Company), October 2003.

Prepared a memorandum evaluating whether an insurance carrier breached the implied covenant of utmost good faith in the resolution of an uninsured motorist coverage claim (Fields V. Woodley & Allstate Insurance Company), August 2003.

Prepared a memorandum evaluating various insurance coverage issues with respect to a theft claim for loss of a motorcycle (Bowling V. Dairyland Insurance Company), July 2003.

Prepared a memorandum evaluating whether an insurance carrier had the duty to defend under a Commercial General Liability insurance policy and an Umbrella Liability insurance policy (Pizza Magia V. Ohio Casualty), April 2003.

Prepared a memorandum evaluating the obligation of an insurance carrier to provide defense and indemnity coverage with respect to a professional liability claim (Professional Health Care Corporation V. Acceptance Indemnity Insurance Company), January 2003.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client ( Little Point Auto Truck Stop, Inc. V. Acordia of Indiana, Inc.), September 2002. This case was tried before a jury in state court in Martinsville, Indiana on November 19, 20, 2002. The jury returned a verdict in favor of the policyholder, assessing sixty percent fault to the insurance agent and forty percent fault to the policyholder.

Prepared a memorandum evaluating whether an insurance carrier's policies and procedures regarding the payment of general contractor's overhead and profit under a homeowners insurance policy constitutes breach and bad faith (Burgess V. Farmers), April 2002.

Prepared a memorandum evaluating whether an insurance carrier's policies and procedures regarding the payment of general contractor's overhead and profit under a homeowners insurance policy constitutes breach and bad faith (Brooks V. State Farm), March 2002.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Professional Health Care Corporation V. J.L. Johnson Insurance Agency), December 2001.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Crim V. Palmer Insurance Agency), September 2000.

Prepared a memorandum evaluating various insurance coverage issues in an employee dishonesty case (Pay Less Supermarkets V. GRE Insurance Group & Travelers Insurance Group), February 2000.

EXHIBIT 2

Prepared a memorandum evaluating various insurance coverage issues in a patent infringement case (Green Machine Corporation V. The Zurich-American Insurance Company), February 2000.

Deposed in the case, Prescott School District V. United States Fidelity & Guaranty Insurance Company, May 1998. In this insurance-to-value case, the insurance carrier requested an evaluation of various insurance coverage issues.

Deposed in the case, J. N. Moser Trucking V. Starck & Associates Insurance Agency, October 1997. In this agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached his professional responsibility.

Insurance Industry Studies:

Commissioned by the National Association of Mutual Insurance Companies (NAMIC), along with Sharon Tennyson, to prepare an Issues Analysis paper concerning legislative expansion of policyholder remedies for first party bad faith. The title of this Issues Analysis paper was, "First Party Insurance Bad Faith Liability: Law, Theory, and Economic Consequences." (September 2008). Participated in a panel discussion that addressed issues pertaining to the above topic at the 2008 NAMIC Convention (September 30, 2008, Philadelphia, Pennsylvania).

Commissioned by Networks Financial Institute at Indiana State University to draft a working paper concerning issues related to insurance regulatory reform. The title of this working paper was, "Insurance Regulation: An Evaluation of Reform Options." (2006)

Commissioned by the Coalition for Quality, Affordable Housing to conduct a study concerning why reliance on litigation to resolve disputes relating to alleged construction defects has contributed to a price/availability problem with respect to contractors liability insurance in California. The result of this study was an article entitled, "Construction Defect Litigation: A Case for Enactment of the California Homebuyer Protection and Quality Construction Act." (1999)

Completed a faculty internship with Safeco Insurance Companies, the purpose of which was to examine the response of state legislatures to disruption in property insurance markets that occurs in the aftermath of a natural disaster, and examine the need for federal reinsurance. The result of this faculty internship was an article entitled, "Natural Disasters and Disruption in Property Insurance Markets: The Case for Federal Reinsurance." (1998)

Commissioned by State Farm Insurance Companies to conduct a study evaluating whether underwriting practices that have a disparate impact on inner-city residents serve a legitimate business purpose. The result of this study was an article entitled, "Market Failure in Urban Property Insurance Markets: An Assessment of Potential Solutions." (1994)

Commissioned by State Farm Fire and Casualty Insurance Company to conduct a study concerning the impact of natural disasters on insurers and the insurance marketplace. The result of this study was an article entitled, "Market Failure in Property Insurance Markets: The Case for a Joint Region-Federal Disaster Insurance Program." (1993)

Professional Service:

Member, Board of Directors, Overseeing the Development and Use of a Monetary Investment Software Tracking Systems (MI$TS) for the purpose of (1) holding contractors and subcontractors connected to construction projects accountable, (2) securing, affordable Builder's Risk Insurance containing Protective Warranties for contractors erecting affordable housing, and (3) protecting the insurable interest of banks who finance these construction projects. (2021-Present).

Made a presentation titled "Application of the Separation of Insureds Condition" to the members of the Indianapolis Bar Association in its Winter Symposium, Insurance Coverage Section, December 9, 2021.

Participated as a panelist in a plenary session sponsored by the United Campus Ministries, and the Indiana State University Center for Economic Education. The title of this session was, "Healthcare Reform: Industry Implications, Insurance Complications, and the Economics of it All." (December 7, 2017, Terre Haute, Indiana).

Assistant Editor, CPCU eJournal, September 2004-2012.

Participated as a panelist in a session held at the 2012 American Association of Insurance Management Consultants Annual Meeting. The title of this session was, "Expert Witness-Plaintiff V. Defendant." (May 5, 2012, St. Petersburg, Florida).

Made a presentation at the 2008 meeting of the Coalition Against Insurance Fraud. The title of this presentation was, "First Party Insurance Bad Faith Liability: Implications for Insurance Fraud."

Participated as a panelist in a plenary session held at the 2008 American Risk and Insurance Association Annual Meeting. The title of this plenary session was, "Expert Testimony in Insurance: A Tutorial." (August 6, 2008, Portland, Oregon).

Member, Indiana Department of Insurance Agent Licensing Initiative. (2005 – 2006).

Participated in a symposium sponsored by the Senior Resource Section of the Society of CPCU. The theme of this symposium was "Dealing with Problems Associated with Retirement." Among other issues, this symposium addressed issues pertaining to nursing home litigation (May 5, 2003, Tampa, Florida).

Served on a panel that addressed various issues pertaining to nursing home litigation. This seminar was sponsored by the Indiana Health Care Association (September 2001).

Made a presentation at the February 2001 meeting of the Terre Haute Association of Insurance and Financial Advisors. The title of this presentation was, "Nursing Home Litigation-Implications for Development of the Private Long-Term Care Insurance Market."

Served on a panel that addressed various issues pertaining to construction defect litigation. This seminar was sponsored by the Central Arizona Chapter of the Society of CPCU (February 2000).

Made a presentation at a CPCU Seminar sponsored by the Grand Lake Chapter (Ohio) of the Society of CPCU (April 1999). The title of this presentation was, "Market Failure in Urban Property Insurance Markets."

Participated in a mock trial jointly sponsored by the Independent Insurance Agents of Indiana and the Central Indiana Chapter of the Society of CPCU (March 1998). This mock trial was entitled "Shifting Agent Responsibilities."

Past President, Western Risk and Insurance Association. (1998)

University Service:

Member, University Leaves Oversight Committee. (2021-Present)

Member, Grade Appeal Committee. (2021-Present)

Member, Teaching, Learning, and Research Committee. (2019-Present)

Member, Health Insurance Program Review Committee. (2008)

Member, Gongaware Study Group. (2005-2006)

EXHIBIT 2

Member, Insurance and Risk Management Program Scholarship Committee. (1990-Present)

Member, Search and Screening Committee for Executive Director of Gongaware Center for Insurance Management Development. (1998)

Developed a Summer Honors Course in Insurance and Risk Management for outstanding high school students, the purpose of which was to create visibility in high schools for the Insurance and Risk Management Program. Conducted a fundraising campaign for the purpose of soliciting contributions to the I.S.U. Summer Honors Course in Insurance and Risk Management Scholarship Fund. This course included classroom instruction, guest speakers, and field trips. (1996-1998)

Chairperson of Search and Screening Committee for Chairperson of Department of Insurance and Risk Management. (1995)

RESEARCH ACTIVITIES:

Applied Research (Professional Journals)

Warfel, "Public Official Bonds: Determining the Intent of the Parties to the Contract," The John Liner Review, Fall 2011, pp. 68-76.

Warfel and Adamson, "Insurance Certificate Disclaimers:  A Tutorial," The John Liner Review, Summer 2010, pp. 52-60.

Warfel, "Agent/Broker Liability-An Identification of Potential Errors and Omissions Liability Issues," CPCU eJournal, May 2010, pp. 1-19.

Warfel, "Agent/Broker Liability: A Tutorial for Commercial Policyholders," The John Liner Review, Winter 2010, pp. 26-37.

Tennyson and Warfel, "The Law and Economics of First Party Insurance Bad Faith Liability," Connecticut Insurance Law Journal, Fall 2009, pp. 203 – 242.

Warfel, "Trade Dress Infringement Litigation: An Identification of Potential Coverage Issues," The John Liner Review, Fall 2008, pp. 41-51.

Warfel, "Follow Form Excess Liability Insurance:  Should the Primary Policy be Considered in Construing the Excess Policy?," CPCU eJournal, October 2008, pp. 1-8.

Tennyson and Warfel, "The Emergence and Potential Consequences of First-Party Insurance Bad-Faith Liability," Journal of Insurance Regulation, Winter 2008, pp. 3-20.

Warfel and Asperger, "Builders Risk and Installation Form:  Inland Marine Insurance or Property Insurance?, " The John Liner Review, Winter 2008, pp. 51-65.

Warfel, "Brownfield Transactions: Identification of Environmental Liability Exposures," CPCU eJournal, September 2007, pp. 1-6.

Warfel, "Insurance Regulation: An Evaluation of Reform Options," CPCU eJournal, July 2007, pp.1-11.

Warfel, "The Liquor Liability Exposure: Risk Management Implications for the Employer,"  CPCU eJournal, December 2006, pp. 1-9.

Warfel, "The Additional Insured Endorsement and the Incentive to Create a Safe Workplace," CPCU eJournal, February 2006, pp. 1 – 6.

EXHIBIT 2

Warfel, "Environmental Insurance Coverage Disputes: Is State Legislation the Solution?," <u>CPCU eJournal</u>, September 2005, pp. 1-12.

Warfel, "Asbestos Litigation Reform: An Identification of Problematic Issues," <u>CPCU eJournal</u>, November 2004, pp. 1-15.

Warfel and Query, "Sexual Harassment Litigation: Risk Management Implications," <u>CPCU eJournal</u>, August 2004, pp. 1-13.

Warfel, "Terrorism and Disruption in Insurance Markets: The Need for a Permanent Solution," <u>CPCU eJournal</u>, June 2003, pp. 1-13.

Warfel and Mikolaj, "Hospital Litigation: Risk Management Implications," <u>CPCU eJournal</u>, April 2003, pp. 1- 18.

Warfel, "Regulation of Risk Retention Groups: A Case for Reform," <u>CPCU eJournal</u>, August 2002, pp. 1-25.

Warfel, "Premises Security Litigation: Risk Management Implications," <u>CPCU eJournal</u>, June 2002, pp. 1-14.

Warfel, "Nursing Home Litigation: A Case for Reform," <u>CPCU Journal</u>, Winter 2001, pp. 233-248.

Warfel, "Natural Disasters and Disruption in Property Insurance Markets: The Case for Federal Reinsurance," <u>CPCU Journal</u>, Spring 2000, pp. 30-48.

Warfel, "Construction Defect Litigation: A Case for Enactment of the California Homebuyer Protection and Quality Construction Act," <u>CPCU Journal</u>, Fall 1999, pp. 157-171.

Warfel, "Coverage Disputes in Construction Defect Cases," <u>CPCU Journal</u>, Winter 1998, pp. 238-247.

Warfel, Mikolaj, and Hamwi, "Genetic Information and Risk Classification in Individual Life and Health Insurance," <u>Journal of the American Society of CLU and ChFC</u>, September 1998, pp. 44-52.

Warfel and Hamwi, "Coverage Disputes in Toxic Tort Liability Cases," <u>CPCU Journal</u>, Spring 1998, pp. 40-48.

Warfel, "Market Failure in Urban Property Insurance Markets: An Assessment of Potential Solutions," <u>CPCU Journal</u>, Summer 1996, pp. 83, 103-115.

Warfel and Hamwi, "Actuarial Practices V. Social Considerations: The Inner-City Property Insurance Problem," <u>Research Review (Journal of the Society of Insurance Research)</u>, Spring 1996, pp. 13-22.

Warfel, "Market Failure in Property Insurance Markets: The Case for a Joint Region-Federal Disaster Insurance Program," <u>Journal of Insurance Regulation</u>, Summer 1994, pp. 486-514.

Warfel, "Were the 1986 CGL Policy Changes Necessary?," <u>CPCU Journal</u>, September 1993, pp. 167-176.

Warfel, "Interpretation of the CGL Policy in Cleanup Cost Cases - Should Insurers Be Required to Pay?," <u>Journal of Insurance Regulation</u>, Summer 1993, pp: 491-508.

Warfel, "Expansion of the Long-Tail Product Liability Exposure -Insurance Price/Availability Implications," <u>Journal of Insurance Regulation</u>, Spring 1993, pp. 379-403.

EXHIBIT 2

Warfel, "Insurance Regulatory Policy - An Analysis of Price/Availability Implications Within the Framework of Insurability," <u>Journal of Business and Economic Perspectives</u>, Spring 1992, pp. 7-12.

Warfel, "The Proposed Federal Earthquake Insurance Program: Is it Viable?," <u>CPCU Journal</u>, March 1992, pp. 49-56.

Warfel, "An Analysis of the Effect of Tort Reform on the Awarding of Punitive Damages in Product Liability Actions," <u>Journal of Insurance Regulation</u>, Winter 1991, pp. 225-238.

Warfel, "Interpretation of the CGL Policy in Long-Tail Product Hazard Cases - Price/Availability Implications," <u>Journal of Products Liability</u>, Volume 13, Number 4, 1991, pp. 301-327.

Warfel, "Tolling of Statutes of Limitation in Long-Tail Product Liability Litigation - The Transformation of the Tort System into a Compensation System," <u>Journal of Products Liability</u>, Volume 13, Number 3, 1991, pp. 205-230.

Warfel, "State-of-the-Art Evidence in Long-Tail Product Liability Litigation - The Transformation of the Tort System into a Compensation System," <u>Journal of Products Liability</u>, Volume 13, Number 3, 1991, pp. 183-204.

Warfel, "Adoption of the Market Share Approach in Long-Tail Product Liability Litigation - The Transformation of the Tort System into a Compensation System," <u>Ohio Northern University Law Review</u>, Volume 17, Number 4, 1991, pp. 785-804.

Warfel, "The Misguided Use of the Doctrine of Punitive Damages in Long-Tail Product Liability Litigation," <u>Journal of Insurance Regulation</u>, March 1991, pp. 455-470.

Warfel, "The Misguided Use of Reasonable Expectations in Long-Tail Products Liability," <u>CPCU Journal</u>, March 1991, pp. 46-55.

Applied Research (Trade Publications):

Warfel, "Defeating an Additional Insured Endorsement," <u>Risk Management Reports</u>, Summer 2011, pp.1-4.

Warfel and Adamson, "Avoiding the Pitfalls of Certificates of Insurance," <u>Risk Management Magazine</u>, June 2010, pp. 1-3.

Tennyson and Warfel, "First-Party Insurance Bad-Faith Liability," <u>Pravartak: Journal of Insurance and Risk Management</u>, May 2009, pp. 78-84.

Tennyson and Warfel, "Bad-faith lawsuits: Raise standard of proof," <u>Fraud Focus</u>, Winter 2009, p. 8.

Warfel, "Bridging the Gap: Follow Form vs. Stand Alone Excess Liability Insurance," <u>Risk Management Magazine</u>, January/February 2009, pp.50-53.

Warfel, "Follow Form v. Stand Alone Excess Liability Insurance: A Tutorial," <u>Ohio Trial</u>, Fall 2008, pp. 19-24.

Warfel and Asperger, "A Landmark for Builder's Risk Insurance Policies," <u>Claims Quarterly</u>, October 2008, pp. 4-6.

Warfel and Asperger, "A Landmark for Builder's Risk Insurance Policies," <u>Risk Management Magazine</u>, February 2008, pp. 32-36.

EXHIBIT 2

Warfel, "One for the Road: The Implications of Liquor Liability," <u>Risk Management Magazine</u>, October 2006, pp. 38-41.

Warfel, "Additional Insureds and the Moral Hazard," <u>Risk Management Magazine</u>, January 2006, pp. 26 – 29.

Warfel and Query, "Sex Ed: Insulating Yourself from Sexual Harassment Litigation," <u>Risk Management Magazine</u>, February 2005, pp. 14-20.

Warfel, "The Rocky Road to Asbestos Litigation Reform," <u>Risk Management Magazine</u>, November 2004, pp. 20-26.

Warfel, "Amending TRIA," <u>Risk Management Magazine</u>, June 2003, p. 47.

Warfel, "Regulating Risk Retention Groups, Part II: Closing the Loopholes," <u>Risk Management Magazine</u>, February 2003, pp. 32-35.

Warfel, "Regulating Risk Retention Groups: A Case for Reform (Part I)," <u>Risk Management Magazine</u>, January 2003, pp. 44-47.

Warfel, "Diagnosing the Nursing Home Liability Insurance Crisis- A Case for Reforming the System," <u>Senior Resource Section Quarterly</u>, January 2003, pp. 2-5.

Warfel, "Risk Management Implications of Premises Security," <u>Risk Management Magazine</u>, November 2002, pp.23-26.

Warfel, "Proposed Legislation Could Decrease Defect Litigation," <u>Builder and Developer</u>, February 2000, p. 58.

Warfel, "Construction Defect Litigation: A Case for Enactment of the California Homebuyer Protection and Quality Construction Act," <u>Mealey's Litigation Report: Construction Defects</u>, November 1999, pp. 43-46.

Warfel, "Were the 1986 CGL Policy Changes Necessary?," <u>Lloyd's Environmental Risk International</u>, December 1993, pp. 3-8.

Pedagogical Research:

Warfel, "Serving as a Testifying Expert Witness in a Breach of Contract/Bad Faith Case: A Retrospective Analysis of an Illustrative Case," <u>Journal of Risk Education</u>, Volume 11, Number 1, 2020/2021, pp. 78-86.

Warfel, " Agent/Broker Errors and Omissions In An Illustrative Commercial Property Insurance Case : A Risk Management Perspective," <u>Journal of Risk Education</u>, Volume 10, Number 1, 2019, pp. 24-34.

Warfel, " The Anatomy of an Employee Dishonesty Coverage Claim: A Risk Management Perspective," <u>Journal of Risk Education</u> , Volume 8, Number 1, 2017, pp. 53-66.

Warfel, "Expert Witness Consulting and Its Relationship to Research, Service, and Teaching," <u>CPCU eJournal</u>, April 2008, pp.1-3.

Warfel and Boose, "Creating Linkages with the Insurance and Risk Management Community," <u>The Journal of Risk Education</u>, Volume I, Number I, 2004, pp. 20-35.

Published a number of short articles pertaining to various property-casualty insurance topics in <u>Encyclopedia Americana</u> (2002, 2003).

EXHIBIT 2

Warfel and Mikolaj, "Forging Partnerships Between Academia and the Insurance and Risk Management Community: Opportunities and Pitfalls," CPCU eJournal, September 2002, pp. 1-4.

Warfel, "Creating Visibility for Insurance and Risk Management Programs in High Schools," Risk Management and Insurance Review, Summer 1998, pp. 99-105.


EDUCATION

GRADUATE:

        Indiana University, Bloomington, Indiana
        Ph.D. May, 1990
        Major: Insurance and Risk Management
        Minor: Finance
        Work-in-Depth (Research Tool): Economic Analysis
        GPA: 3.7/4.0

        University of Oklahoma, Norman, Oklahoma
        MBA August, 1983
        Major: Accounting/Finance
        GPA: 3.8/4.0

UNDERGRADUATE:

        St. John's University, New York, New York
        BBA December, 1980
        Major: Insurance
        GPA: 3.8/4.0

AWARDS:

        Indiana State University, Theodore Dreiser Distinguished Research/Creativity Award (2008)

        Indiana State University, College of Business Exemplary Scholarship Award (2008)

        Indiana State University, College of Business Professional Productivity (Scholarship) Award (1995)

        State Farm Foundation Doctoral Dissertation Award - $10,000 (1987)

        CPCU/Harry J. Loman   Foundation Doctoral Dissertation Award - $5,000 (1987)

PROFESSIONAL DESIGNATIONS:

        Chartered Life Underwriter (CLU) (1994)

        Chartered Property Casualty Underwriter (CPCU) (1987)

PERSONAL:

        Marital Status: Married (Debra)
        Date of Birth:  December 2, 1957

REFERENCES:

EXHIBIT 2

Craig R. Patterson
Beckman Lawson, LLP
201 West Wayne Street
Fort Wayne, Indiana 46802
Re: Bankers Life and Casualty V. Nancy Arlene Klapes and Home Nursing Services, Inc.
(260) 425-1643

Dr. Tim Query
Mountain States
Insurance Group Chair
New Mexico State University
Department of Finance
MSC 3FIN
Las Cruces, New Mexico 88003
(575) 646-5253

Dr. Sharon Tennyson
Department of Policy Analysis and Management
252 MVR Hall
Cornell University
Ithaca, New York 14853
(607) 255-2619

Brett E. Nelson, Partner
Plews, Shadley, Racher, & Braun LLP
1346 North Delaware Street
Indianapolis, Indiana 46202-2415
Re: RAP INDY, LLC & MSI Lynhurst Indianapolis Grocery, LLC V. Zurich-American Insurance
and The Travelers Indemnity Company
(317) 637-0700

Ryan K. Cummings, Partner
Hodson Russ, LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Re: VTS V. National Union Fire Insurance Company of Pittsburgh, Pennsylvania
(716) 856-4000

Francis J. Curran, Jr., Esquire
The Curran Firm, P.C.
200 East State Street, Suite 103
Media, Pennsylvania 19063
Re: Christian Eckman, Individually and as Executor of the Estate of Deana Marie Eckman,
Deceased V. David Strowhouer and William J. Strowhouer, Jr., D.O., and Encompass
Home and Auto Insurance Company, and USAA Casualty Insurance Company
(610) 566-5300

Emily C. Guenin-Hodson
Mark C. Guenin
Guenin Law Office, P.C.
574 South Miami Street
Wabash, Indiana 46992
Re: Magdalen France, by and through her natural parents and guardians V. Regency
Northern Indiana, LLC, and RMS Wabash, LLC, Defendants V. Property-Owners Insurance

EXHIBIT 2

Company
(260) 569-7900

Chris Rouskey, Esquire
Rouskey and Baldacci
210 North Hammes Avenue, Suite 105
Joliet, Illinois 60435
Re: Cardinal Transport and C R Transport V. Assured Partners of Ohio, LLC, Successor in
Interest to Roemer Insurance and Robert Schwartz, Individually
(815) 741-2118

EXHIBIT 2

MEMORANDUM

To:      Rob Uhorchuk

         Attorney-At-Law

         Spicer Rudstrom, PLLC

         537 Market Street, Suite 203

         Chattanooga, Tennessee 37402


From:   William J. Warfel, Ph.D., CPCU, CLU

         Warfel Consulting

         1011 Barrington Drive

         Greencastle, Indiana 46135


Re:     Builders Mutual Insurance Company V. GCC Construction,

         LLC & Tahini Main Street, LLC


Date:   July 13,2023


In forming opinions concerning the Complaint for Declaratory Judgement submitted by Builders

Mutual Insurance Company In The United States District Court For The Eastern District of Tennessee

Chattanooga Division on August 19,2022, as well as the claim handling issues connected to the claim

presented to Builders Mutual Insurance Company by GCC Construction, LLC & Tahini Main Street, LLC, I relied on my training, education, and experience, reflected in my attached CV, and my careful review of the following documents:

(1) the Complaint For Declaratory Judgement itself, which references a remodeling project undertaken by Tahini Main Street in downtown Chattanooga on Main Street, which entailed purchasing a multi-story building that was maybe one hundred years old or so, and transforming it into a multiple occupancy building, including a restaurant/bar on the first floor, and offices for individual lease on the upper floors; this project was viewed as viable by Tahini Main Street, given the prime location of this building in a core business district contained within the greater downtown of Chattanooga; given that this multi-story building was close to one hundred years old, Builders Mutual Insurance Company understandably requested the drawings connected to this planned renovation such that the risk of loss could be carefully evaluated; the record confirms that these drawings were made available to the underwriting department; these drawings confirmed that window cuts not only were planned for the West Side Wall, but also other walls within the building; most importantly, the record confirms that documentation simply does not exist that remotely suggests either GCC Construction (the named insured), or Tahini Main Street (the additional insured), had any foreknowledge concerning the existence of decay and deterioration within the West Side Wall, as well as other walls within the building; of course, the existence of decay and deterioration within the West Side Wall became known on or about November 15,2021 when windows were cut in the West Side Wall as part of the planned renovation; of course, after Builders Mutual Insurance Company cancelled the applicable Builder's Risk policy upon receiving the builder's risk claim connected to this litigation, the planned renovation continued moving forward, with decay and deterioration being discovered in other walls within the building, with the determination eventually being made by GCC Construction and Tahini Main Street, along with the City of Chattanooga, to the effect that the building had major structural integrity issues

2

EXHIBIT 2

connected to load bearing walls, meaning that the planned renovation simply was not a commercially viable undertaking; the result was a decision to demolish the building; of course, the record confirms that GCC Construction, the named insured under a Builder's Risk policy issued by Builders Mutual Insurance Company, and Tahini Main Street, an additional insured under this policy, submitted a builder's risk claim to remove and replace the West Side Wall, confirming the undisputable fact that this wall was in a state of collapse; the initial claim submission requested payment in the amount of $1,079,225, and was restricted solely to loss connected to decay and deterioration within the West Side Wall; of course, the applicable Builder's Risk Declaration confirms that a Limit of Insurance of $7,300,000 is available for the entire loss connected to demolishing the building, assuming that the subsequent collapses of other walls within the building are connected to the partial collapse of the West Side Wall that occurred on or about November 15,2021; following the submission of this builder's risk claim, Builders Mutual Insurance Company ostensibly but deceptively requested several extensions in terms of stating its coverage position with respect to this builder's risk claim, referenced above, knowing that its intent was simply to delay the commencement of the sixty (60) day period provided under the Tennessee "Bad faith refusal to pay" statute under which it was required to fully pay the rightful builder's risk claim that had been previously presented to it by GCC Construction & Tahini Main Street; instead, Builders Mutual Insurance Company through defense counsel filed with the trial court a Complaint for Declaratory Judgement, citing multiple provisions contained in the builder's risk policy as a basis for its complete denial of this rightful builder's risk claim; these provisions are identified in this Memorandum below; in this Memorandum, I assert that Builders Mutual Insurance Company is not only incorrect in its application of these cited provisions to this claim, but also Builders Mutual Insurance Company processed this builder's risk claim in a manner that is inconsistent with sound claims handling practices in the insurance industry; it failed to apply the plain text of its policy, first wrongfully asserting that a covered peril had not caused the collapse, notwithstanding the fact that the terms of its policy clearly states that a partial collapse is covered; second, once management realized that its claim representative had misrepresented the terms of its

3

Case 1:22-cv-00208-TRM-CHS   Document 96-3   Filed 09/29/23   Page 24 of 36   PageID #: 1028

EXHIBIT 2

policy, still not wanting to pay a rightful claim, management elected to completely ignore Tennessee legal precedent in terms of what constitutes a state of collapse under the terms of its policy, wrongfully asserting that a complete collapse is required to invoke coverage when it knew, or should have known, that a partial collapse also invokes coverage;

 (2) the Builders Risk Underwriting Questionnaire, including the Insured's Statements in response to the underwriting inquiries contained in this questionnaire, which was included in the claim file produced by Builders Mutual Insurance Company; many of these inquiries pertain to the risk of loss presented by this planned renovation project, to which GCC Construction truthfully and completely answered, providing drawings confirming window cuts were an essential component of this planned renovation, thereby enabling Builders Mutual Insurance Company to accurately underwrite this account, and charge an actuarially equitable premium of $27,479 for builder's risk coverage connected to this planned renovation project; relevant risk of loss inquires and responses included, for example, (a) does this structure have more than three stories?  (Response-4 stories), (b) was the structure originally constructed before 1960? (Response-1925, meaning that the building is close to one hundred years old), (c) describe the renovations/remodeling to be done (Response-sheetrock to make the space and office; it is an interior buildout with bathrooms, breakroom, etc. for [housing] group office [occupancy]), (d) is any foundation work, above-ground structural work, or movement of load-bearing walls to be done? (Response-Yes, [detailed] structural plans sent), (e) Has a certified architect or engineer signed off on the [structural] plans (Response-Estes Russell Engineering), (f) What is the expected total cost of renovations/improvements?  (Response- $4,400,000), and (g) is Existing Structure Coverage being requested? (Response – We need $2,900,000);

 (3) a series of e-mails/letters, which ultimately resulted in Builders Mutual Insurance Company submitting to the trial court on August 19,2022, its Complaint for Declaratory Judgement; this series

4

EXHIBIT 2

of e-mails/letters are referenced below in evaluating whether Builders Mutual Insurance Company processed the builder's risk claim presented by GCC Construction/Tahini Main Street in a manner that is consistent with sound claims handling practices in the insurance industry;

(4) the applicable Builders Mutual Insurance Company Builder's Risk Coverage Form itself under which the project being undertaken by GCC Construction/Tahini Main Street at 27 West Main Street, Chattanooga 37404 (per the Builder's Risk Declaration) was insured with a start date of September 2,2021; the insuring agreement stipulates that "We [Builders Mutual Insurance Company] will pay for direct physical 'loss' [including 'collapse',  so long as the 'collapse' was accidental, and so long as the cause of the 'collapse' fits within the terms of the 'collapse' coverage contained in the applicable builder's risk policy] to Covered Property [including an Existing Building or Structure to which an addition, alteration, improvement, or repair is being made so long as this Existing Building or Structure is specifically endorsed to the policy-Building One located at 27 West Main Street, Chattanooga, Tennessee 37404, and is identified as the Construction Premises in the Builder's Risk Declaration attached to the applicable Builder's Risk Policy] from any Covered Cause of Loss [including 'Collapse' (1) We [Builders Mutual Insurance Company] will pay for direct physical loss or damage to Covered Property [the Existing Building or Structure located at 27 West Main Street, Chattanooga, Tennessee 37404], caused by 'collapse' of all or part of a building or structure caused by one or more of the following: . . . (b) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to 'collapse'  [the Estes-Russell Engineering Engineering Memo dated June 10,2022, authored by David Cartwright, PE, Principal Structural Engineer, referenced below, confirms that the cause of the 'collapse' of the Existing West Brick Wall is severe, unforeseen deterioration contained within this wall, meaning that this wall is not sufficiently, structurally viable to function as a load-bearing wall for the planned renovation of this building]. ... (2) With respect to a covered building or structure [the Existing Building or Structure located at 27 West Main Street, Chattanooga, Tennessee

5

EXHBIT 2

37404]: (a) 'Collapse' means an abrupt falling down or caving in of a covered building or structure in whole or in part [when the window opening was created in the West Brick Wall, a portion of the Existing Building or Structure abruptly fell down or caved in-this undisputed fact is confirmed by examining carefully the photographs taken by Estes-Russell Engineering, which are attached as exhibits to its Engineering Memo, referenced above]; (b) A covered building or structure [the Existing Building or Structure located at 27 West Main Street, Chattanooga, Tennessee 37404] that is in danger of falling down or caving in is not considered to be in a state of 'collapse' [a careful examination of the photographs, referenced above, confirm that the 'collapse' is not imminent, but rather the 'collapse' had already occurred by the time that the photographs were taken by Estes-Russell Engineering] ....";

(5) the Estes-Russel Engineering Engineering Memo dated June 10,2022, along with the clarification requested by Builders Mutual Insurance Company dated July 19,2022; most importantly, this Engineering Memo confirms that "[i]n the original evaluation of the condition of the [West Brick Wall], all visual indications were that the existing [West Brick Wall] was stable, and able to withstand the renovations planned for it (i.e., the new window openings, the new floor loads, and the new rooftop patio, etc.). The spalling issues on the exterior side [of the West Brick Wall] were to be repaired by shotcreting the exterior side of the [West Brick Wall], thus enhancing the structural integrity of the [West Side Wall]," all meaning that the partial 'collapse' of the West Side Wall was unforeseeable on the September 2,2021 start date of this planned renovation; of course, when a window opening was created in the West Side Wall, "it became clear that the interior of [the West Side Wall] had deteriorated far greater than anticipated; mortar joints disintegrated into powder, courses of existing brick fell out randomly, and chunks of brick broke apart easily," resulting, of course, in the partial 'collapse' of the West Side Wall; "It became clear to all that the interior of the existing [West Side Wall], uncovered to this point, was indeed not structurally stable, and would be unable to support all the renovations needed for this [West Side Wall]"; in summary, this partial 'collapse' (1) was "caused by

6

EXHIBIT 2

decay that was hidden from view or discovery based on the nature of the inside or internal aspect of the [West Side Wall] such that the [partial] 'collapse' occurred during the course of said construction, remodeling or renovation", (2) "[constituted] an abrupt falling down or caving in of the building or structure in whole or in part and caused the [existing] building in whole or in part to be in a state of 'collapse' that required additional work, repair and caused direct physical damage and loss to the [existing] building and structure", all meaning that the builder's risk claim submitted by GCC Construction/Tahini Main Street to Builders Mutual Insurance Company fits squarely within the parameters spelled out in the 'Collapse' provision, referenced above, contained in the applicable Builder's Risk Policy; finally, Photo Number Eight attached to this Engineering Memo confirms the severe deterioration in the interior of the West Side Wall that was clearly unknowable on the September 2,2021 start date of this planned renovation, meaning that the loss connected to this initial claim submission was fortuitous in nature and, therefore, constituted a perfectly insurable risk for which the applicable Builder's Risk policy was designed to cover; additional discovery is required to determine whether the subsequent collapses of the other walls within the building are connected to the partial collapse of the West Side Wall, in which case the demolition of the entire building would be a covered loss, subject to the $7,300,000 Limit of Insurance, referenced above;


 (6) the transcript of the Videotaped Deposition of Kim Allen, the Builders Mutual Insurance Company claim representative to whom the claim giving rise to this litigation was assigned; upon receipt of this assignment, Allen requested that Collins & Company, an independent claims adjusting firm, perform an inspection of the building at which the partial collapse had occurred, informing Collins & Company (Greg Bankston, a claim adjuster as opposed to an engineer) that an engineer needed to accompany him (Greg Bankston) to the building site for the purpose of determining the cause of the partial collapse, knowing that whether coverage was applicable hinged on the cause of the partial collapse; not wanting to approve payment for a rightful claim, Allen wrongfully concluded that a partial collapse

7

EXHIBIT 2

was not covered under the terms of the policy, relying on this incorrect coverage determination to justify not retaining an engineer for the purpose of determining the cause of the partial collapse; most importantly, in effect, Allen acknowledged in her deposition that the claim falls squarely within the parameters of the coverage, acknowledging that (1) the partial collapse was caused by decay that was unknowable on the inception date of coverage (i.e., mortar holding the bricks in place within the West Side Wall had deteriorated with the passage of time, the decay being first discovered when the windows on the West Side Wall were cut), and (2) the partial collapse was linked to the lack of sufficient weight bearing capacity of the West Side Wall, an exposure to loss connected to the planned renovation of the building for which GCC Construction & Tahini Main Street had sought to insure under the applicable builder's risk policy; notwithstanding the fact that Allen acknowledged the existence of the facts pertaining to this claim, referenced above, confirming that this claim was indeed covered, Allen still cancelled the loss reserve connected to this claim on November 29,2021, not bothering to retain an engineer for the purpose of investigating the cause of the partial collapse so as to either confirm that the engineer retained by its insured was correct in its findings, or alternatively incorrect in its findings; notwithstanding the fact that Allen knew on November 29,2021 that a firm decision had been made by Builders Mutual Insurance Company not to pay a rightful claim, Allen testified in her deposition that she had requested from counsel for Tahini Main Street a twenty-one (21) day extension for the ostensible, but deceptive, purpose of "gather[ing] responses from our resources [before] respond[ing]" with a definitive coverage position with respect to the submitted claim; in explaining why a definitive coverage position was never conveyed to the insured, Allen explained that Builders Mutual Insurance Company had filed a Declaratory Judgement Action for the purpose of seeking from the court a clarification in terms of whether or not the claim was covered, notwithstanding the fact that the claim notes do not confirm that a coverage opinion from outside counsel was ever sought by Allen consistent with custom and practice in the industry; and

EXHIBIT 2

(7) the transcript of the Videotaped Deposition of Susan McCracken, the Builders Mutual Insurance Company corporate representative, and the Commercial Claim Manager to whom claim representative Kim Allen reports; McCracken testified in her deposition that a mere examination of the photographs taken by independent adjuster, Greg Bankston (Collins & Company), referenced above, were sufficient to determine that the claim did not fit within the parameters of coverage, reasoning that for coverage to be invoked, there needed to be "complete walls down, cave-ins, stuff like that [i.e., a complete collapse]", notwithstanding the fact that the plain text of the policy confirms that a partial collapse is sufficient to invoke coverage; McCracken further testified in her deposition that, in evaluating whether there was a sufficient "state of collapse" to invoke coverage, the weight bearing capacity of the West Side Wall was completely irrelevant- "it [the engineering report] states that it [the West Side Wall] is not structurally viable to carry the loads of the new renovation. It [the engineering report] does not say it's [the West Side Wall] collapsed, it [the engineering report] just says that it [the West Side Wall] can't handle the renovation"; notwithstanding the presence of these so-called deficiencies contained in the engineering report, McCracken testified in her deposition that, assuming the Cartwright opinion as documented was true and accurate, then the claim would be covered under the terms of the policy; in asserting that Builders Mutual Insurance Company followed custom and practice in the industry, seeking a coverage opinion from outside counsel, McCracken stated in her deposition that she never bothered to review carefully this coverage opinion, reasoning that it was merely "a tool used in our determination [to formally deny coverage in its December 7,2021 claim denial letter]. And then that is why we [Builders Mutual Insurance Company]-it was decided to go file a DJ [Declaratory Judgement] Action"; most importantly, notwithstanding the fact that McCracken never bothered to review the coverage opinion of outside counsel, even though she supervised claim representative, Kim Allen, in the handling of this claim, McCracken testified that a failure to review carefully a coverage opinion provided by outside counsel constitutes a failure to investigate and subject the findings of such an investigation to a reasonable evaluation and review, not consistent with best claims handling practices in the industry; McCracken testified in her deposition that the privilege log confirms that claim

9

EXHIBIT 2

representative, Kim Allen, was conferring with outside counsel in anticipation of litigation, the filing of a Declaratory Judgement Action, ten (10) days before sending an e-mail to counsel for Tahini Main Street requesting a twenty-one (21) day extension in terms of asserting whether Builders Mutual Insurance Company intended to pay a rightful claim, a transparent, dishonest attempt to stop the sixty (60) day clock from "ticking" under the Tennessee "Bad faith refusal to pay" statute; the only reasonable inference is that this request for an extension to reconsider its unfavorable coverage position was a dishonest, false pretext created by Builders Mutual Insurance Company such that it could extend the statutory bad faith deadline and shore up its litigation counsel and file suit against its insureds, GCC Construction & Tahini Main Street. Indeed, the claim file contains no documentation to the effect that Builders Mutual Insurance Company was considering, or re-considering, its denial of coverage position at this time, or at any other time; finally, McCracken testified in her deposition that claim representative, Kim Allen, did not wrongfully first assert that a covered peril must cause the "state of collapse" to invoke coverage, explaining that the rationale articulated by Allen in her December 7,2021 claim denial letter was merely a "rewording" of what Allen had previously stated in her earlier November 29,2021 e-mail denying coverage; in fact, Allen's rationale for denying coverage was completely different in the December 7,2021 claim denial letter, asserting that coverage did not exist based on her contention that the covered building or structure, or a part thereof, was merely "in danger of falling down or caving in" and, thus, was "not considered to be in a 'state of collapse'"; this conclusory statement, that a "state of collapse" was imminent, but had not yet actually occurred, is not supported by an engineering report, or even an inspection report submitted by an independent adjuster, a requirement to determine whether there was a sufficient 'state of collapse' to invoke coverage under the terms of the policy; that being the case, of course, the claim file confirms that neither Allen nor McCracken, or anyone else, at Builders Mutual Insurance Company went through the various subsections of the policy for the purpose of analyzing whether the varied definitions of "Collapse," as provided for in the policy in the different subsections, applied to this claim; Tennessee

10

EXHIBIT 2

case law concerning what constitutes "collapse" under a Builder's Risk policy demands that this sort of analytical analysis be undertaken to make a proper coverage determination.

In summary, my opinions are as follows:

1. The documents, referenced above, clearly speak for themselves, clearly establishing, without any doubt whatsoever, that the submitted builder's risk claim falls within the ambit of coverage provided under the applicable Builder's Risk Policy. In processing claims in the insurance industry, the cardinal principle is that a policy's plain text is paramount. Builders Mutual Insurance Company clearly failed to apply this cardinal principle in this case.

2. Inland Marine Insurance evolved from Marine Insurance. For a detailed discussion of this evolution, see Warfel, William J. & Asperger, Jeffrey J., "Builders Risk and Installation Form: Inland Marine Insurance or Property Insurance?", The John Liner Review, Winter 2008, pp. 51-65. As inland marine insurance evolved from ocean marine insurance, inland marine insurance coverage forms, including the builder's risk coverage form underwritten by Builders Mutual Insurance Company, were created to provide comprehensive coverage for property exposures, including a planned renovation on a one hundred year old building, with coverage to be provided on an open peril (or all-risk) basis, with coverage excluded only for those perils that were clearly uninsurable, including, most importantly, loss that is not fortuitous in nature. This inland marine insurance coverage feature clearly is present in the applicable Builder's Risk Policy underwritten by Builders Mutual Insurance Company. This policy includes coverage for "direct physical 'loss' (defined specifically to include only loss that is fortuitous, or accidental, in nature) to covered property (the Existing Building or Structure to be renovated by GCC

11

EXHIBIT 2

Construction/Tahini Main Street at 27 West Main Street, Chattanooga, Tennessee 37404) from any covered cause of loss". "Covered cause of loss" is defined specifically to include (a) direct physical loss, other than collapse, excluding only uninsurable risks of loss such as nuclear hazard, war, and military action, etc., and (b) 'collapse' (defined specifically in the policy to include a partial "state of collapse", referenced above). In short, given that the partial collapse, in this case, stemmed from the unforeseeable deterioration of materials contained in the West Side Wall, causing the Existing Building or Structure to become structurally unsound on account of a "state of partial collapse", the intent of the parties to the applicable Builder's Risk Policy clearly was to cover this sort of loss.

3. Given that (1) the completed Builder's Risk Underwriting Questionnaire produced by Builders Mutual Insurance Company confirms that this carrier was fully aware of the nature of the exposure to loss that it had agreed to insure under its applicable Builder's Risk Policy, and (2) the plain and ordinary text of this policy, coupled with the findings presented in the Estes-Russel Engineering Engineering Memo (to the effect that the partial collapse of the West Side Wall was attributed to severe, unforeseen deterioration in the materials contained within this wall), the issue arises concerning whether Builders Mutual Insurance Company conducted any semblance of an investigation concerning whether the cause of loss in this case was in fact a covered cause of loss (per the definition contained in its Builder's Risk Policy). The record confirms that it clearly did not, meaning that Builders Mutual Insurance Company processed this claim in a manner that was inconsistent with sound claims handling practices in the insurance industry. Builders Mutual Insurance Company retained Collins & Company to perform an investigation concerning the cause of the partial collapse of the West Side Wall. A November 19,2021 e-mail was sent from Mitchell McBee, Project Manager, to Jason

12

EXHIBIT 2

Rothenberg, real estate developer, stating that "Collins & Company did not bring an engineer to the site with them this morning." Most importantly, a Collins & Company Invoice dated November 23,2021, addressed to Builders Mutual Insurance Company confirms that Greg Bankston, Vice President at Collins & Company, did not take with him an engineer to the site, as suggested by Kim Allen, the Commercial Adjuster at Builders Mutual Insurance Company who processed this claim. Most importantly, the items contained in the November 23,2021 Invoice, referenced above, only include a fee for inspecting the site of the loss, taking photographs of the partial collapse, and time spent on the telephone consulting with Kim Allen, all totaling a paltry $118.44. The only reasonable inference is that the independent adjuster, Greg Bankston, never submitted to Kim Allen an inspection report needed to ascertain whether there was a sufficient "state of collapse" to invoke coverage, strongly suggesting that the intent from the beginning was to deny coverage for a rightful claim. Indeed, the record confirms that Kim Allen never bothered to create a claim note documenting the content of her communications with independent adjuster, Greg Bankston.

Notwithstanding this clear and convincing evidence documenting a total and complete lack of an investigation concerning the cause of the partial collapse, referenced above, a letter from Kim Allen dated December 7,2021 addressed to the named insured, GCC Construction, states "that we [Builders Mutual Insurance Company] have completed our investigation…. A review of the [applicable] Builder's Risk Policy reveals there is no indemnification for this loss." Furthermore, this letter concludes that the cause of loss was excluded, even though the cause of loss was unknown because the carrier had failed to retain an engineer to investigate for the purpose of identifying the cause of the partial collapse of the West Side Wall. Without knowing the cause of the partial collapse of the West Side Wall, one cannot determine whether the loss fits within the ambit of coverage provided under the collapse provision contained in the

13

EXHIBIT 2

applicable Builder's Risk Policy. For this reason, failing to retain an engineer to conduct such an investigation is at odds with sound claims handling practices in the insurance industry.

4. In response to the December 7,2021 claim denial letter, referenced above, GCC Construction/ Tahini Main Street retained legal counsel, and a "Demand for Payment of Claim and Notice of Bad Faith" letter dated June 13,2022, was sent to Kim Allen at Builders Mutual Insurance Company advising that full payment needed to be received within sixty (60) days of the date of receipt of this letter by Builders Mutual Insurance Company, pursuant to the applicable Tennessee statute addressing first-party bad faith. Attached to this letter was the Estes-Russell Engineering Engineering Memo confirming that the cause of the partial collapse of the West Side Wall fits within the ambit of the collapse provision contained in the applicable Builder's Risk Policy. A clarification concerning this Engineering Memo was requested by Kim Allen in a letter addressed to legal counsel, dated June 27,2022, and this clarification was provided in a supplement dated July 19,2022, referenced above. Because a clarification had been requested by Builders Mutual Insurance Company concerning the content contained in the Engineering Memo, referenced above, the parties agreed to a twenty-one (21) calendar day extension from the date of receipt by Builders Mutual Insurance Company of the July 21,2022 cover letter (to which the requested clarification dated July 19,2022, had been attached). The record confirms that Builders Mutual Insurance Company did not subject this requested clarification, referenced above, to a careful evaluation and review upon receipt consistent with sound claims handling practices in the insurance industry, which called for Builders Mutual Insurance Company to retain its own engineer to assess "collapse," or the condition of the West Side Wall per the terms of the policy. Instead, Builders Mutual Insurance Company retained legal counsel, filing a frivolous Complaint for Declaratory Judgement with the trial court on August 19,2022.

14

EXHIBIT 2

5. As referenced above, these opinions are based upon my analysis of the documents listed above, as well as my training, education, and experience, which is reflected in my CV, a copy of which is attached. These opinions contained herein are made within a reasonable degree of certainty from the perspective of an expert in insurance and risk management. I reserve the right to expound upon my written opinions contained herein during deposition and/or trial testimony and to supplement my opinions based on the documents that I have reviewed. These opinions are subject to revision and supplementation upon additional discovery in this case.

**End of the Expert Report**

EXHIBIT 2